CITY OF JENKINS, Kentucky, the Intervening Petitioner, Appellant,

v.

Robert L. CURY et al., as Coadministrator of the Estate of George L. Cury, Deceased, Appellee.

Court of Appeals of Kentucky.

June 2, 1961.

Leroy W. Fields, F. Byrd Hogg, Whitesburg, for appellant.

Stephen Combs, Jr., Whitesburg, for appellees.

MOREMEN, Judge.

Appellees, A. C. and Cora Combs, purchased property in the City of Jenkins, known as the Recreational Hotel. They executed notes in the aggregate amount of $28,500 and a lien was retained in the deed to secure payment of them. Thereafter, in due course, George L. Cury became owner of the notes. He died and title to the notes vested in his personal representatives who are also appellees. On April 26, 1952, the Combs sold the Recreational Hotel to J. E. and Dixie Polly who assumed and agreed to pay the balance due on the vendor notes.

On December 3, 1956, after the building had burned in November 1955, the adminis-trators of the estate of George L. Cury—R. L. Cury and M. B. Thrower—filed suit to coerce the payment of a balance due on the notes of $16,500. Judgment was entered which awarded a first lien on the property for the amount due and a sale was ordered.

On March 3, 1958, the property was sold to Adams Real Estate Corporation for $6,-800 and that sum is now in the hands of the Master Commissioner awaiting distribution.

On November 11, 1958, before the proceeds of sale had been distributed, the city of Jenkins intervened in the suit and sought to be adjudged a tax lien in the sum of $364.32. There is no dispute about this item and the court awarded the city a first lien against the proceeds of sale. However, the court refused to adjudge a prior lien for the city's second claim which has precipitated this appeal.

After the hotel burned in November 1955, the walls remained standing. The Kentucky State Fire Marshal and the Fire Department of Jenkins made a determination that the damaged walls constituted an immediate hazard to members of the public who used the streets of Jenkins.

On September 14, 1957, after the original judgment, but before sale, the city enacted an ordinance purportedly under KRS 80.620 to 80.720.

Briefly the act provides that whenever a city finds that dwellings exist which are unfit for human habitation, or are dangerous to public health or safety, it may exercise its police power to repair or demolish such dwellings. The city must designate a public officer who, upon petition, shall investigate the basis for the charge that a house is unfit or unsafe, fix a day for a hearing and notify the owner or parties in interest of the nature of the hearing. If, after the notice and hearing, there is a determination of unfitness the officer shall serve upon the owner a notice to repair the structure if the repair can be made at a cost that is less than 50% of the value of the

dwelling. If the repair will cost more than 50% of the value then the owner may be ordered to remove or demolish it. If the owner fails to comply with such an order the public officer may cause the dwelling to be repaired or demolished, as the case may be, and the amount of the cost "shall be a lien upon the real property upon which such cost was incurred." If the dwelling is demolished by the public officer or removed, he shall sell the materials and credit the proceeds of such sale against the cost of removal or demolition.

The court adjudged that the city had "no lien against the proceeds of sale of the property now in the hands of the Commissioner because the demolition of the property was started after the sale to Adams Real Estate Corporation and, further, because the sections of the statute were not complied with and the proceedings taken thereunder are void."

■ The lien given by the statute and ordinances results from a proceeding in rem. The lien attaches to the thing itself and the condition of ownership or title is of no significance. The fact that the title to the property is in the process of being divested from one owner and transferred to another does not resist the attachment of the lien. The property is there and the lien, if valid, attaches to it. A personal judgment does not result.

In view of the fact that we are holding in this opinion that the lien is not prior to the vendor's lien it will not be necessary to discuss whether the lien attaches to the proceeds of this sale because the amount of the judgment on the notes exceeds the entire sale price.

■ In the above-quoted portion of the judgment the court also held that the city failed to comply with certain sections of the statute. He did not assign the reason for this judgment, but we gather from the brief of appellee that it was based upon the idea that sections 80.620 to 80.720, the enabling act under which the city enacted its ordinances and proceeded to demolish the property, are not applicable because those statutes were intended to apply to housing projects alone, and were not directed to an individual piece of property. It is true that those sections appear in the Kentucky Revised Statutes under the general heading of "Housing Projects," and the whole of Chapter 80 is concerned with enabling various municipalities to reduce and abolish slum areas and provide decent housing facilities for their citizens. However, a reference to the Acts of the General Assembly of 1942 discloses that Chapter 73 deals with housing projects in the broad sense, and Chapter 73 is "An Act authorizing cities to adopt ordinances relating to the repair, closing and demolition of dwellings unfit for human habitation," and this act alone is the one that is codified under KRS 80.620 to 80.720. It stands alone and necessarily may be used in any connection where the well-being and the safety of the general public are involved. The statute reviser evidently grouped it with the Housing Project Act because he anticipated that the rights given would be used most often in connection with slum clearance.

It appears in the record that the various steps necessary to be taken before the lien attached were performed and proper notice was given.

■ We reach, then, the question of whether the lien created by these statutes has the dignity of a tax lien and we have concluded that it has not.

Subsection (3) of KRS 80.670 reads in part:

"The amount of the cost of repairs, alterations or improvements, or vacating and closing, or removal or demolition shall be a lien upon the real property upon which such cost was incurred."

■ We believe it fair to assume that if the legislature had intended that this lien should be of equal rank with a tax lien, it

would have said so. We will give to the words used, therefore, the meaning which spontaneity suggests—that is the time-honored rule that between equal equities, priority of time will prevail. The lien must be assigned its chronological place.

Although the trial court denied the claim of the city to a superior lien on the proceeds of sale on grounds different from the ones stated above, the result reached is the same, i. e., under the facts the first lien note holders are entitled to a lien on the entire proceeds of the sale, after taxes, prior to the city's lien, and the sale did not bring enough to satisfy this first lien. The judgment will therefore be affirmed.

 In conclusion we note that the highest bidder at the sale is not a party to this appeal and we do not by this opinion intend to adjudicate any right he may have, or to decide any question not specifically discussed.

Judgment affirmed.